**UNITED STATES of America**

**v.**

**1988 BMW 750IL, VEHICLE ID NO. WBAGC8318J2765453 WITH ACCESSORIES AND EQUIPMENT.**

Civ. A. No. 88–6746.

United States District Court, E.D. Pennsylvania.

April 17, 1989.

**172**

Catherine Votaw, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Joseph C. Santaguida and Peter Scuderi, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DuBOIS, District Judge.

The plaintiff, United States of America (hereinafter the "Government") brought this action *in rem* seeking forfeiture of defendant car, a 1988 BMW model 750IL, pursuant to 49 U.S.C.App. § 782 and 21 U.S.C. § 881(a)(4). The Government bases the forfeiture action on the allegation that the defendant car was used to transport or facilitate the transportation, sale, receipt, possession or concealment of controlled substances. Claimant, Rhonda Hinton, filed a claim to the defendant car as the record owner.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

A non-jury trial was held before the Court on April 10, 1989. After considering the testimony of the witnesses, the exhibit submitted by the Government at trial, and the legal arguments of counsel, the Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT:

On the evening of February 17, 1988, Philadelphia Police Sergeant Edward Hargadon observed the defendant car illegally parked at the Northwest corner of Fayette Street and Roumford Road in Philadelphia. The defendant car is a 1988 BMW model 750IL valued at approximately $75,000. He observed one individual in the defendant car. Sergeant Hargadon did not immediately approach the vehicle, but rather waited and continued his observation. He then saw a man carrying a bag enter the passenger side of the car. The car then pulled away, and Sergeant Hargadon followed. After Sergeant Hargadon observed the car go through a stop sign without stopping and making a U-turn, Sergeant Hargadon stopped the car at the Northeast corner of Fayette Street and Roumford Road.

At the request of the Sergeant, the driver identified himself as Benjamin Goff. Goff could not produce the car's registration, and he gave conflicting stories to the Sergeant regarding its ownership. A check with the Pennsylvania Department of Motor Vehicles revealed that Goff's driver's license was under suspension, but the check revealed no owner for the car. The passenger identified himself as Leonard Patterson; he produced no identification and stated that he did not have a valid driver's license. Claimant Rhonda Hinton was not in the car at the time of the stop by the Sergeant.

Sergeant Hargadon opened the door on the driver's side to obtain the vehicle identification number (VIN). While he was doing this, he noticed a sneaker bag on the floor of the backseat standing upright and filled with money. After Goff and Patterson got out of the car, Sergeant Hargadon reached into the car, pulled out the bag, and saw that it contained a large amount of currency in small bills.

Sergeant Hargadon questioned the occupants of the car regarding the bag. Patterson stated that he worked for Goff at a business called "A–Tech." Goff stated that A–Tech was an auto detailer business and that the money in the bag was from that business. Sergeant Hargadon also observed that Patterson wore a ring with the initials "JBM" on it. The Sergeant understood those initials to stand for "Junior Black Mafia," an organization that he believed was connected to drug related activi-

ties. In addition, Sergeant Hargadon noted that the money in the bag was wrapped into bundles, another clue causing the Sergeant to believe that the money was drug related.

Sergeant Hargadon decided to take custody of the car. His decision was based on two factors: First, neither of the occupants had a valid driver's license and therefore neither was legally able to drive the car away; and second, the Sergeant believed that leaving the car parked at or near that street corner posed an unreasonable risk of vandalism or theft. The car was then taken to the police station for safekeeping and for further investigation into its ownership.

After the car arrived at the police station, the contents of the vehicle were inventoried. Although there is no evidence that there are written regulations for the inventory procedure, such an inventory is standard. The inventory revealed, *inter alia*, a registration in the name of the Claimant and the bag of money. The bag was emptied, and the money was counted. The bag contained $2,741 in one dollar bills, $760 in five dollar bills, $1,340 in ten dollar bills, $2,240 in twenty dollar bills, and $100 in fifty dollar bills for a total of $7,181.

A prior criminal history check revealed that Goff and Patterson had prior arrests for drug related offenses. This history of criminal activity, along with the evidence acquired from the inventory of the car and from the information given to Sergeant Hargadon by Goff and Patterson, caused the police to believe that the money was drug related. Therefore, a drug sniffing dog was brought in to see if the dog could detect any drugs. The money was placed back into the sneaker bag and hidden in a drawer in a room. After approximately five minutes, the dog "hit" on the money— the dog found the money and reacted—suggesting that the money was tainted with drugs.

The day after the car was taken into custody, and after the dog sniff, the bag of money was searched again. In this second search, a small amount of cocaine was found. On the basis of all this evidence, the Government seeks to have the defendant car forfeited.

## II. CONCLUSIONS OF LAW:

A vehicle is subject to forfeiture if it is used or intended to be used to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances. 21 U.S.C. § 881(a)(4). "[A] vehicle may be seized if there is probable cause to believe that it was used or was intended for use to facilitate the transportation of contraband." *United States v. Ogden*, 703 F.2d 629, 635 (1st Cir.1983).

■ I find that Sergeant Hargadon acted properly when he took custody of the defendant car on the evening of February 17, 1988. After properly stopping the vehicle for traffic violations, the Sergeant discovered that neither occupant was a licensed driver. Clearly, he could not have allowed either occupant to drive the vehicle away from the scene. Only two choices remained; the vehicle could be parked near where the car was stopped, or the vehicle could be taken into protective custody.

Sergeant Hargadon determined that the vehicle would not be safe if left parked on the side of the road. He decided, quite correctly, that a $75,000 car could be the target of theft or vandalism. Taking custody of the vehicle under these circumstances was a valid exercise of the "community caretaking function" of the police. *See South Dakota v. Opperman*, 428 U.S. 364, 368–69, 96 S.Ct. 3092, 3096–97, 49 L.Ed.2d 1000 (1976). *See also, United States v. Brown*, 787 F.2d 929 (4th Cir. 1986), *cert. denied*, 479 U.S. 837, 107 S.Ct. 137, 93 L.Ed.2d 80 (1986) (police lawfully impounded defendant's vehicle after his arrest for drunk driving and where no known individual was immediately available to take custody of his car); *United States v. Johnson*, 734 F.2d 503 (10th Cir.1984) (towing car which intoxicated defendant could not drive was appropriate exercise of police community caretaking function); *United States v. Staller*, 616 F.2d 1284 (5th Cir. 1980), *cert. denied*, 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980) (taking custody of

defendant's car, lawfully parked in mall parking lot, after defendant and his companion were arrested was a legitimate exercise of arresting officer's community caretaking functions). In fact, Pennsylvania law specifically provides that a police officer may remove a vehicle from the highway to a place of safety when the person in charge of the vehicle is physically unable to provide for its custody or removal. 75 Pa. C.S.A. § 3352(c)(2).

Although the lack of a licensed driver was sufficient to allow Sergeant Hargadon to take the car into protective police custody, other factors contributed to the Sergeant's decision. First, the ownership of the car was unclear. Neither Goff nor Patterson could produce the car's registration or recall the full name of the owner. In fact, Goff initially said that he was the owner of the car. The Department of Motor Vehicles could not provide any information regarding the ownership of the vehicle at the scene. Sergeant Hargadon certainly had a legitimate interest in retaining custody of the car until the ownership of the car could be determined.

Second, Sergeant Hargadon had a reasonable suspicion that Goff and Patterson were engaged in drug related activities. The "JBM" ring that Patterson wore suggested to the Sergeant that Patterson might be involved with the Junior Black Mafia, an organization that the Sergeant believed was involved in drug related activities. In addition, the bag of money standing on the floor of the back seat was bundled and in small denominations. Although Goff stated that the money was from his business, he had no receipts. The Sergeant, based upon his experience, believed that the money may have been the proceeds from drug sales.

■ The search of the bag of money at the stop was not objectionable under the Fourth Amendment to the United States Constitution.[1] Although evidence obtained in violation of the Fourth Amendment and subject to the exclusionary rule is to be excluded in a civil forfeiture proceeding, *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), Sergeant Hargadon's search of the bag of money at the scene of the stop was valid pursuant to the "plain view" exception to the warrant requirement. In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), a plurality of the U.S. Supreme Court enunciated three requirements to satisfy the plain view exception:

> First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. Second, the officer must discover incriminating evidence "inadvertently," which is to say, he may not know in advance the location of certain evidence and intend to seize it, relying on the plain view doctrine only as a pretext. Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure.

*Texas v. Brown*, 460 U.S. 730, 736–37, 103 S.Ct. 1535, 1540–41, 75 L.Ed.2d 502 (1983) (citations omitted).

■ In the present case, those requirements are met. Sergeant Hargadon saw the bag of money when he opened the door to obtain the VIN on the door jamb. A police officer may open the door to a stopped vehicle to observe the VIN without first obtaining a warrant. *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). There is no evidence that the VIN inspection by the Sergeant was a pretext. Finally, the fact that the money was bundled and in small denominations made it "immediately apparent" to Sergeant Hargadon that the money might

---

1. Even if the search of the bag of money was objectionable, it would not require me to exclude that evidence. I find that the Sergeant would have taken custody of the car whether or not he discovered the bag of money. Therefore, the money would have been legitimately discovered by the police later in the course of a standard inventory search. Because I find that the evidence would have been ultimately discovered by lawful means, the so-called ultimate or inevitable discovery exception to the exclusionary rule allows the Court to admit the evidence. *See Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

be evidence of a crime and subject to seizure.

Once the defendant vehicle was taken into custody, the police were authorized to conduct an inventory search. *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Inventory searches developed in response to three distinct needs: The protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and, the protection of the police from potential danger. *Opperman,* 428 U.S. at 369, 96 S.Ct. at 3097.

■ Testimony at the trial did not establish that the police conducted the inventory search pursuant to written standardized regulations. However, despite dicta in *Bertine* suggesting that written regulations might be necessary, the Third Circuit has held that formalized, pre-existing standards are not necessary. *United States v. Frank,* 864 F.2d 992 (3d Cir.1988). The critical analysis is whether the police officers are vested with discretion to determine the scope of the inventory search. *Id.,* 864 F.2d at 1003.

In the present case, although not in writing, the evidence reveals that there is an established procedure for conducting an inventory search. Removing the bag of money from the car, removing the money from the bag, and counting the money is part of the established inventory procedure. A careful inventory of the money is necessary to protect the police from claims or disputes over the loss of any money, and it also protects the owner of the car should any money be lost subsequent to the police taking custody of the car.

■ The dog sniff is not objectionable under the Fourth Amendment. Although the dog sniff is purely investigatory and does not further any of the interests of an inventory search, the dog sniff is not considered a search. *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983).

This case may be analogized to *United States v. Green,* 474 F.2d 1385 (5th Cir. 1973), *cert. denied,* 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63 (1973). In *Green,* a deputy fire marshal was lawfully within an empty apartment investigating the cause of a fire when he discovered what appeared to be counterfeit plates. The fire marshal called for a Secret Service agent who joined him in the apartment and identified the plates as counterfeiting devices. The Fifth Circuit rejected the argument that the Secret Service agent's warrantless entry into the building was unlawful, stating:

Once the privacy of a dwelling has been lawfully invaded, to require a second officer from another law enforcement agency arriving on the scene of a valid seizure to secure a warrant before he enters the premises *to confirm that the seized evidence is contraband* and to take custody of it is just as senseless as requiring an officer to interrupt a lawful search to stop and procure a warrant for evidence he has already inadvertently found and seized.

*Green,* 474 F.2d at 1390, *citing, Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) (emphasis added). In the present case, the officers in charge of the inventory search had a reasonable suspicion that the bag of money might be contraband or subject to seizure; the sniffer dog was lawfully brought in to confirm that suspicion.

■ The evidence adduced up to this point[2] establishes that there was probable cause to believe that the defendant car was used to facilitate the transportation of contraband. "The probable cause necessary in a forfeiture proceeding is a reasonable

**2.** Because the verification by the sniffer dog provided the last piece of evidence necessary to establish probable cause, the Court need not decide the question whether the second search of the bag of money was properly conducted without a search warrant. Without deciding this question, I note that the second search may not have been valid under the inventory search exception to the warrant requirement. *See Vance v. United States,* 676 F.2d 183 (5th Cir. 1982).

ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. One 1979 Mercury Cougar XR-7,* 666 F.2d 228, 230 n. 3 (5th Cir.1982). Probable cause is established by all of the evidence up to this point: The criminal records of Goff and Patterson; their statements to Sergeant Hargadon; the bag of money and the way the money was bundled; the denominations of the money; and, the verification by the sniffer dog of traces of narcotics.

Because the Government has established probable cause to believe that the defendant car was used to facilitate the transportation of controlled substances under 21 U.S.C. § 881(a)(4), judgment will be entered in favor of the plaintiff, United States of America, and against the defendant, 1988 BMW 750IL, Vehicle ID No. WBAGC8318J2765453 with accessories and equipment.

An appropriate Order follows.

### ORDER

AND NOW, to wit, this 17th day of April, 1989, after a non-jury trial, it is ORDERED that judgment is entered in favor of the plaintiff, the United States of America, and against the claimant, Rhonda Hinton. The defendant automobile, 1988 BMW 750IL, Vehicle ID No. WBAGC8318J2765453 is forfeited to the United States of America.