STATE of Iowa, Appellant,

v.

Tammy Jean HUISMAN, Appellee.

No. 94–1655.

Supreme Court of Iowa.

Feb. 14, 1996.

Rehearing Denied March 20, 1996.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, Thomas Mullin, County Attorney, and Mark Campbell, Assistant County Attorney, for appellant.

Paul M. Bengford and Stanley E. Munger of Munger & Reinschmidt, Sioux City, for appellee.

Before McGIVERIN, C.J., and LARSON, NEUMAN, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

The State charged appellant, Tammy Jean Huisman, with possession of a controlled substance and failure to affix a drug tax stamp after the police discovered methamphetamines during an inventory search of her car. *See* Iowa Code §§ 124.401(1)(c)(6), 453B.12 (1993). The district court granted Huisman's motion to suppress the evidence found during the vehicle search. The court concluded the search violated the Fourth Amendment to the United States Constitution because the impoundment of Huisman's car was improper. We granted the State's application for discretionary review.

We hold the Fourth Amendment demands the impoundment decision be made according to standardized criteria and an administrative or caretaking reason to impound exists. Because the impoundment here meets this test, it is reasonable under the Fourth Amendment. Therefore, we reverse and remand.

## I. *Background Facts & Proceedings.*

Early in the morning on March 22, 1994, police conducted a warranted search of Kenneth Frazier's motel room. They found methamphetamines, a firearm and a large amount of currency. Frazier was arrested.

Frazier's aunt, Carolyn Rouillard, learned of the arrest and wanted to pick up her nephew's belongings before his soon-to-be ex-wife arrived at the scene. Rouillard asked her friend Tammy Huisman to drive; Rouillard had not renewed her driver's license because she had a bad knee.

Huisman drove Rouillard and Rouillard's nineteen-year-old niece, Jeanna Denny, to the motel. Upon arriving, Rouillard asked the manager to let her into Frazier's room to retrieve his property. The manager refused. She had received several phone calls from people claiming to be relatives of Frazier and she wanted to check with the police before letting anyone in the room. The manager directed Rouillard to park and wait in front of Frazier's room.[1]

Uniformed police officer O'Connoll was the first officer on the scene. The manager walked over, gave him Frazier's room key and returned to her office. Uniformed officer McBride then arrived to assist O'Connoll. Finally, plain-clothed drug enforcement agents Young and Reilly appeared on the scene "to find out who these people were and to identify these people for intelligence information and to run warrant checks on them."

Young and Reilly, wearing badges, asked Huisman for identification. Huisman presented her driver's license. After seeing Huisman's name on her license Reilly remembered finding a gun in her purse during a prior search. Young asked for Huisman's purse; he was concerned for his safety. Reilly dumped the contents of the purse on the car's hood and then left to run a warrant check.

Meanwhile, Young asked Huisman if they could "look around in her car." He told her he wanted to look for drugs. Huisman admits giving consent, but claims she was afraid. Young searched the passenger compartment and found no contraband.

While Young searched the vehicle, Reilly discovered an outstanding warrant for Huisman's arrest for failing to appear on a failure to maintain control charge. *See* Iowa Code § 321.288 (1993). The police then arrested Huisman and placed her in O'Connoll's car.

---

1. Testimony conflicted as to the car's precise location after it was parked by Huisman: the officers testified it was in the driveway, but other witnesses stated it was next to the grass. In any event, the trial court found as a fact that the car was not illegally parked, did not impede traffic and was not a safety hazard. For purposes of our consideration of this case, we accept these factual findings.

Huisman claims that she changed her mind about the search at that point and told the officers to stop searching her car. Reilly denied hearing the request.

The officers asked Rouillard and Denny if either had a driver's license so they could drive the car out of the motel parking lot; neither did. The officers then decided to impound the vehicle and inventory its contents. Young and Reilly conducted the inventory search in the parking lot. While Reilly searched the trunk, Young looked in the passenger compartment and listed the items they discovered on the department's impoundment form. Reilly's search of the trunk uncovered two containers of methamphetamine in the pocket of a jacket and two syringes.

Huisman was charged with possession with intent to deliver a controlled substance and failure to affix a tax stamp. She moved to suppress the evidence discovered during the search of her car. The State resisted, arguing the search was lawful under exceptions to the warrant requirement for consent and inventory searches. The district court sustained Huisman's motion, concluding her consent to the search of her car was limited to the passenger compartment. The court also rejected the State's argument that the search was a valid inventory search incident to a lawful impoundment, relying on our decision in *State v. Kuster*, 353 N.W.2d 428 (Iowa 1984), which required "a showing that some reasonable necessity prompted the impoundment."

■ We review the district court's ruling on this Fourth Amendment issue de novo. *State v. Halliburton*, 539 N.W.2d 339, 341 (Iowa 1995). Because we conclude the officers conducted a valid inventory search of Huisman's vehicle, we do not address the consent issue.

II. *Fourth Amendment Jurisprudence: Inventory Searches.*

■ The Fourth Amendment of the United States Constitution protects against *unreasonable* searches and seizures. *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706, 713 (1973).

There is a consensus in construing this directive that, except for a few carefully defined classes of cases, a search of private property without valid consent is *unreasonable* unless it has been authorized by a warrant issued upon probable cause. *Id.; South Dakota v. Opperman*, 428 U.S. 364, 381–82, 96 S.Ct. 3092, 3103, 49 L.Ed.2d 1000, 1012 (1976) (Powell, J., concurring); *Camara v. Municipal Court*, 387 U.S. 523, 528–29, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930, 935 (1967).

■ One well-recognized exception to the warrant clause is a vehicle inventory search. *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739, 745 (1987); *Opperman*, 428 U.S. at 369–71, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005–06. This exception responds to the practical problems arising when police remove a vehicle's operator and are then left to care for that vehicle. In such circumstances, police act in a caretaking capacity rather than as criminal investigators. *State v. Jackson*, 542 N.W.2d 842, 845 (Iowa 1996); *see Opperman*, 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005.

■ The legality of an inventory search depends on two overlapping inquiries: the validity of the impoundment and the scope of the inventory. *Jackson*, 542 N.W.2d at 845. If either is unreasonable, the search violates the Fourth Amendment and evidence discovered in the search must be suppressed. *Id.*

III. *Lawful Impoundment.*

■ The threshold question is whether the impoundment itself was proper. *See Opperman*, 428 U.S. at 373, 96 S.Ct. at 3099, 49 L.Ed.2d at 1007–08; *Jackson*, 542 N.W.2d at 845. An impoundment is proper if it is reasonable. *See Cady*, 413 U.S. at 448, 93 S.Ct. at 2531, 37 L.Ed.2d at 718. The fighting issue is how to define what is reasonable.

A. *Reasonableness of impoundment.* Huisman contends the police must have reasonable cause to impound a vehicle. She relies on our decision in *Kuster* that the State must show "some reasonable necessity" to justify the impoundment. *See Kuster*, 353 N.W.2d at 433. In *Kuster*, we found the police lacked reasonable cause to impound

the defendant's legally parked car because the vehicle and its contents were in no danger of vandalism or theft and impoundment was unnecessary for police protection because the location of the car was remote from the site of the defendant's arrest.

This analysis flowed from the policy reasons justifying the warrantless seizure of automobiles: (1) safety of the traveling public, *Cady,* 413 U.S. at 443, 93 S.Ct. at 2529, 37 L.Ed.2d at 715–16; (2) the creation of a nuisance by an abandoned vehicle, *id.* at 447, 93 S.Ct. at 2531, 37 L.Ed.2d at 718; and (3) protection of the car from theft or vandalism, *United States v. Ramos–Morales,* 981 F.2d 625, 626 (1st Cir.1992), *cert. denied,* 508 U.S. 926, 113 S.Ct. 2384, 124 L.Ed.2d 287 (1993). *See Kuster,* 353 N.W.2d at 431–32. Thus, in *Kuster,* we looked at whether impoundment was reasonably necessary to achieve these objectives in deciding whether impoundment was constitutionally permissible.

■ Since our decision in *Kuster,* the United States Supreme Court has clarified the test for lawful impoundments. *See Bertine,* 479 U.S. at 375, 107 S.Ct. at 743, 93 L.Ed.2d at 748. In *Bertine,* the analysis shifted from the reasonableness of the officer's decision to the existence of reasonable standardized policies. *Id.* The Supreme Court held that police may lawfully choose to impound a vehicle so long as that decision is made "according to standardized criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* Therefore, we no longer examine the reasonableness of the officer's decision to impound; we look for the existence of reasonable standardized procedures and a purpose other than the investigation of criminal activity.

This approach prevents courts from "second-guess[ing] a police officer's exercise of professional judgment regarding impoundment of an automobile when the judgment was exercised in accordance with otherwise reasonable police department regulations." *People v. Toohey,* 438 Mich. 265, 475 N.W.2d 16, 23 (1991). It also recognizes the practical realities faced by busy police officers making impoundment decisions: " '[A] single familiar standard is essential to guide police officers, who have only limited time and expertise to

reflect on and balance the social and individual interests involved in the specific circumstances they confront.' " *Bertine,* 479 U.S. at 375, 107 S.Ct. at 743, 93 L.Ed.2d at 748 (quoting *Illinois v. Lafayette,* 462 U.S. 640, 648, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65, 72, 73 (1983)); *accord Ramos–Morales,* 981 F.2d at 627 ("To hold that busy arresting officers must leave a suspect's car behind if they lack information about the surrounding neighborhood's crime rate runs contrary to the rationale that underlies the case law authority, for it invites the very kinds of risks that the cases hold justify impoundment procedures such as the one here at issue.").

■ B. *Existence of reasonable standardized criteria.* To decide whether the impoundment and inventory here were valid, we must examine whether the Sioux City police department has reasonable standardized criteria. Such a policy need not be exclusively written. *United States v. Agofsky,* 20 F.3d 866, 873 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 280, 130 L.Ed.2d 196, *cert. denied,* —— U.S. ——, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994); *see United States v. Kordosky,* 921 F.2d 722, 723–24 (7th Cir.) (preexisting, unwritten policy requiring inventory search on every car seized for forfeiture is sufficient), *cert. denied,* 502 U.S. 826, 112 S.Ct. 94, 116 L.Ed.2d 66 (1991); *United States v. Frank,* 864 F.2d 992, 1003 (3d Cir.1988) (finding sufficient a preexisting, unwritten policy for inventory on vehicles seized for forfeiture), *cert. denied,* 490 U.S. 1095, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989); *cf. United States v. 1988 BMW 750IL,* 716 F.Supp. 171, 175 (E.D.Pa.) ("formalized, preexisting standards are not necessary"; "although not in writing ... there is an established procedure for conducting an inventory search"), *aff'd,* 891 F.2d 281 (3d Cir.), *aff'd,* 891 F.2d 284 (3d Cir.1989). Here a written departmental policy and an unwritten, standard practice are implicated.

First, the department has a written policy governing search and seizure:

> When an arrest involves a motor vehicle being operated by the arrested party, the vehicle may be searched under several conditions.

. . . .

When the operator of any vehicle is taken into custody, reasonable requests for accommodation involving vehicle impoundment will be honored. Such accommodation includes, but is not limited to: properly parking the vehicle, or turning the vehicle over to an unimpaired licensed driver who is readily available. These vehicles will not be inventoried or impounded. Requests for accommodation which are unreasonable will not be granted. In these cases, the vehicle will be fully inventoried, and the proper Impound Form will be prepared.

This policy allows an officer to exercise judgment regarding whether to impound a vehicle when the officer arrests the operator. Second, testimony revealed police custom limiting discretion. Reilly testified that impoundment follows an arrest "[i]f there's no one to take control of the vehicle." We must decide whether department regulations and/or standard practice contain reasonable standardized criteria limiting an officer's discretion to impound a vehicle.

■■ "The critical factor in determining whether too much discretion has been granted to police officers regarding impoundment of an arrested person's automobile is the ability for arbitrary searches to be conducted by the police officers." *Toohey,* 475 N.W.2d at 26. The possibility of arbitrary searches is curtailed here because there are limited opportunities for the exercise of police discretion. The written policy mandates that police honor an operator's reasonable request for accommodation. Absent such a request, the standard practice mandates impoundment if no licensed driver is available. *See United States v. Andrews,* 22 F.3d 1328, 1335 (5th Cir.) (upholding unwritten policy mandating vehicles be towed and inventoried whenever the driver is arrested), *cert. denied,* —— U.S. ——, 115 S.Ct. 346, 130 L.Ed.2d 302 (1994).

We also observe that the impoundment policy here is more restrictive of police discretion than the policy upheld in *Bertine.* In *Bertine,* the policy set forth conditions limiting use of a park-and-lock alternative to impoundment. *See Bertine,* 479 U.S. at 376 n. 7, 107 S.Ct. at 743 n. 7, 93 L.Ed.2d at 748 n. 7. The Supreme Court concluded this policy contained reasonable standardized criteria. *Id.* at 375–76, 107 S.Ct. at 743, 93 L.Ed.2d at 748. The Sioux City policy limits police discretion even more: impoundment occurs only when the driver makes no reasonable request for accommodation and no licensed driver is at hand. We conclude reasonable standardized criteria govern impoundment decisions made by members of the Sioux City police department.[2]

■ C. *Compliance with standardized criteria: alternatives to impoundment.* Huisman asserts the police did not follow their departmental policy because they failed to explore alternatives to impoundment. Huisman's argument fails because the policy does not require the police to provide for the safekeeping of the vehicle in some manner other than impoundment unless the operator requests an accommodation. Huisman made no request for accommodation, so her argument is without merit.

■ Huisman also asserts that even if the impoundment complied with department regulations, less intrusive alternatives existed that the police should have offered. This contention finds support in *Kuster* where we suggested the police must give the defendant an opportunity to provide for the care of the vehicle. *See Kuster,* 353 N.W.2d at 432. However, in *Bertine,* the United States Supreme Court rejected such a requirement with respect to inventory procedures: "[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Bertine,*

2. Huisman contends that the city's policy does not contain standardized criteria because Young testified that he need not follow the policy, only his knowledge of the law. Consequently, Huisman argues, the policy provides police with limitless discretion. We believe Young's statement was merely a reflection of the policy's introduction which states "that judicial decisions may serve to expand or limit [the policy].... and it is the policy of the Sioux City Police Department to conduct its operations within the framework of those decisions."

479 U.S. at 374, 107 S.Ct. at 742, 93 L.Ed.2d at 747; *see Jackson,* 542 N.W.2d at 845–46 (holding *Bertine's* rejection of "less intrusive manner" as a legal standard required we overrule *State v. Casteel,* 392 N.W.2d 168 (Iowa App.1986) which applied a contrary balancing test).

 We believe this statement applies equally to impoundment decisions in view of the general principle that "[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Lafayette,* 462 U.S. at 647, 103 S.Ct. at 2610, 77 L.Ed.2d at 72; *cf. State v. Edgington,* 487 N.W.2d 675, 679 (Iowa 1992) (dictum) ("The United States Supreme Court indicated the Fourth Amendment does not require police officers to provide an arrestee an alternative to impoundment if they are acting under reasonable police regulations relating to inventory procedures which are executed in good faith."). Therefore, the Constitution does not require that the police seek less invasive alternatives to the impoundment of Huisman's vehicle. *See Toohey,* 475 N.W.2d at 27.

 *D. Motive for impoundment.* As we noted earlier, an impoundment is unconstitutional if it is done to investigate suspected criminal activity. *See Bertine,* 479 U.S. at 374, 107 S.Ct. at 742, 93 L.Ed.2d at 747. Huisman alleges police impounded her car as a mere pretext for an investigatory search for drugs. The officers' testimony appears to support this argument because Young's initial request to search the vehicle was for the express purpose of looking for drugs. In addition, Reilly testified that he examined photographs found in the trunk "[t]o see if they were perhaps other known drug people or if they were using drugs in the photographs." We assume for purposes of our analysis that the officers were at least partially motivated to impound Huisman's vehicle by the belief that her car might contain contraband.

Nevertheless, an investigatory purpose invalidates an inventory search only if the search is conducted for the *sole* purpose of investigation. *Agofsky,* 20 F.3d at 873 (investigatory motive does not invalidate inventory search); *United States v. Rodriguez–Morales,* 929 F.2d 780, 787 (1st Cir.1991) (when impoundment stems in part from investigatory motive it "does not change either the analysis or the result"), *cert. denied,* 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992); *Frank,* 864 F.2d at 1001 ("The mere fact that an inventory search may also have had an investigatory purpose does not, however, invalidate it."); *United States v. Staller,* 616 F.2d 1284, 1290 (5th Cir.) (search not invalidated by suspicion contraband may be found), *cert. denied,* 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980); *People v. Ocon,* 221 Ill.App.3d 311, 163 Ill.Dec. 738, 740–41, 581 N.E.2d 892, 894–95 (1991) (subjective improper motive does not invalidate impoundment and search of vehicle done according to objectively reasonable, standard police procedures); *cf. State v. Meyer,* 543 N.W.2d 876, 879 (Iowa 1996) ("[a] search incident to arrest is legal even if the arresting officer had an ulterior motive for the arrest"); *State v. Hofmann,* 537 N.W.2d 767, 770 (Iowa 1995) (arrest is not pretextual if the officers were "legally permitted and objectively authorized" to make the arrest even though officers may also have believed a search incident to the arrest might reveal evidence of illegal drug use); *State v. Day,* 528 N.W.2d 100, 103 (Iowa 1995) (roadblock not illegal simply because officers discovered criminal violations besides those listed in statute as permissible reasons for a roadblock). This approach prevents "[p]enalizing officers who are candid enough to admit that they hope to find evidence of a crime." *United States v. Bowhay,* 992 F.2d 229, 231 (9th Cir.1993). Any other rule would "only encourage obfuscation and dishonesty, without protecting reasonable expectations of privacy." *Id.*

 To decide whether the officers were motivated solely by an investigatory purpose, we examine whether, when viewed objectively, an administrative reason for the impoundment existed. *See Fair v. State,* 627 N.E.2d 427, 433 (Ind.1993) (the state must show the existence of caretaking reasons "consistent with objective standards of sound policing"). If the officers could have had a caretaking reason to impound the car, then we assume

they did not act solely to investigate criminal activity. We do not analyze the subjective motivations of the officers.

■ The facts here show an administrative reason for the officers' decision to impound Huisman's vehicle could have existed. After the officers arrested Huisman and removed her to the police station, Young and Reilly took custody of her vehicle. Young asked Huisman's passengers if they could move the car but neither passenger had a valid driver's license. Huisman made no request for accommodation. The motel owner had previously called police to tow unauthorized cars from her lot. Indeed, the sign in the motel's office stated that only guests are allowed to park in the lot; others must park to the south (out of the motel lot). The manager testified that the motel does not allow nonpaying guests to store cars in the lot. While the manager also stated it would be fine to leave the car there for "a little longer," implicit in this statement is the fact that she would not let the car remain in the lot for an unknown period of time.

This evidence shows that Huisman's vehicle could have become a nuisance if left in the motel parking lot. Therefore, an administrative reason for the impoundment objectively exists. *See United States v. Ponce*, 8 F.3d 989, 996 (5th Cir.1993) (recognizing impoundment of car located in public parking lot fell within officers' caretaking functions because car "could have become a nuisance" or "could have been damaged or stolen"); *United States v. Brown*, 787 F.2d 929, 932 (4th Cir.) (impoundment of car parked in private parking lot was reasonable "because the car could have constituted a nuisance in the area in which it was parked"), *cert. denied*, 479 U.S. 837, 107 S.Ct. 137, 93 L.Ed.2d 80 (1986). Consequently, we must conclude that in choosing to impound the vehicle the police did not act solely upon the hope that they would discover evidence of criminal activity. The presence of an investigatory motive does not invalidate the impoundment: The police followed a reasonable policy containing standardized criteria and they did not act solely for purposes of criminal investigation.

## IV. *Inventory Procedures.*

■ Once the officers took custody of the car, department regulations required them to inventory its contents. Such an inventory must be conducted according to standardized criteria. *Bertine*, 479 U.S. at 375–76, 107 S.Ct. at 743, 93 L.Ed.2d at 747–49; *Jackson*, 542 N.W.2d at 845. Adherence to a standardized policy is critical for a valid inventory search because "compliance tends to indicate that the inventorying was limited to that necessary to carry out the caretaking function." *Fair*, 627 N.E.2d at 432. Huisman argues the inventory of her car was not conducted in this manner because the vehicle was not impounded, towed to the station and then inventoried. Instead the officers inventoried Huisman's car at the motel and then drove it to the station.

■ Huisman's argument is not convincing because the department policy does not require that the vehicle be towed nor does it require that the inventory be done at the police station. The relevant portion of the policy merely demands the completion of an inventory form: "All vehicles impounded at the direction of a member of the Department will be fully inventoried, and the proper Impound Form will be prepared. This includes all containers which may hold valuables or other personal property, even if closed." Here, the officers complied with the policy by preparing the impoundment form while they searched the car at the motel lot. Moreover, Huisman's argument is contrary to the caretaking policy underlying vehicle inventories: If police must first tow a vehicle to the station and then conduct an inventory, the police run the risk that the vehicle's contents may disappear—the very risk inventories are intended to avoid. *See State v. Roth*, 305 N.W.2d 501, 504–05 (Iowa), *cert. denied*, 454 U.S. 870, 102 S.Ct. 338, 70 L.Ed.2d 174 (1981). We conclude the evidence Huisman seeks to suppress was discovered during a legally valid inventory search of her vehicle.

## V. *Summary.*

We apply the legal principles set forth in *Bertine*. Therefore, to the extent *Kuster* is inconsistent, that decision is overruled.

The impoundment of Huisman's vehicle was constitutional because (1) the police followed reasonable standardized criteria in deciding to impound her car and (2) objectively there exists an administrative reason for the impoundment. The inventory of the car's contents was also constitutional because the police followed the standard policy of the department. For these reasons, we must reverse the district court's suppression ruling and remand for further proceedings.

**REVERSED AND REMANDED.**