**IN THE COURT OF APPEALS OF IOWA**

No. 15-1695
Filed June 21, 2017

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**ANTHONY ALBERT TRONCA,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Todd A. Geer, Judge.

Defendant appeals his conviction for murder in the first degree. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Heard by Danilson, C.J., and Potterfield and Bower, JJ.

**BOWER, Judge.**

Anthony Tronca appeals his conviction for murder in the first degree. We find the district court did not err in denying Tronca's motion to suppress. Also, Tronca has not shown the police department lacked reasonable standardized procedures for the impoundment of the car and the impoundment was for the purpose of investigating criminal activity, so the impoundment is not unconstitutional. Additionally, Tronca has not shown he received ineffective assistance due to defense counsel's failure to raise a claim under the Iowa Constitution there had been an improper pretextual stop. We preserve for possible postconviction proceedings Tronca's claim of ineffective assistance due to the failure to challenge the seizure of his business building. We affirm Tronca's conviction for first-degree murder.

## I.    Background Facts & Proceedings

On September 9, 2014, Waterloo police officers received a missing person report for Ronald Randall. The officers were aware Randall was friends with Curtis Radamacher and Radamacher was often present at AJT Auto, an auto body shop owned by Tronca. There was also information methamphetamine was being distributed from the business and Tronca owned firearms. Additionally, officers received information Randall was last seen at AJT Auto and there had been a shooting at the business.

Officers went to AJT Auto in an attempt to locate Radamacher. In addition to wanting to talk to Radamacher about the missing person case, there was a warrant for Radamacher's arrest for probation violations. Tronca came to the door and told the officers he did not know Radamacher. The officers said they

were not concerned about what was going on at the business, "so anything beyond a dead body, we're not concerned about." Tronca responded, "[T]hat's why I'm not going to let you in here." The officers left without contacting Radamacher.

On September 11, 2014, Elvis Medrano, who was cooperating with the police, told Officer Jeffrey Zubak that Radamacher would be present at a specific address. Officers set up surveillance at the home. They observed Radamacher and Tronca come out of the house. Tronca put a dark-colored bag into the trunk of an Oldsmobile Alero, and then he drove away in the vehicle with Radamacher as a passenger.

The officers decided to stop the vehicle, knowing there was an arrest warrant for Radamacher. A marked police car behind the Alero activated its lights, but the Alero did not stop right away. Officer Joseph Saunders saw movement in the vehicle and thought the occupants were "possibly trying to hide something." When the vehicle was stopped, Radamacher had a backpack between his feet, which he threw into the backseat. Radamacher was not compliant with officers' requests and was arrested for probation violations and interference with official acts. He was transported to the police station.[1]

The officers determined the Alero was registered to Tronca's wife, Jennifer Tronca. The officers discovered Tronca's driver's license had been suspended, and he was arrested for driving while license suspended. Tronca was also transported to the police station. He did not ask for anyone else to pick up the

---

[1] At the police station, Radamacher stated he did not feel well because he had swallowed methamphetamine. He was given medical assistance.

Alero. Officer Jeffrey Tyler determined the vehicle should be towed to the impound lot. He stated this was based partially on the traffic stop, but also because officers wanted to look further into the missing person case. Officer Tyler stated there was no one to drive the vehicle from the scene because both the driver and passenger had been arrested.

A police dog sniffed around the vehicle at the impound lot and alerted to narcotics. Officers obtained a search warrant for the vehicle. They found methamphetamine, a .380 Lorcin handgun, and ammunition for a .45 firearm.[2]

Radamacher later told officers he, Tronca, and Randall had been smoking methamphetamine on September 2, 2014, in a room at AJT Auto used to paint vehicles, when Tronca asked Randall if Randall had sex with Tronca's girlfriend, Jessica Ogden. Tronca did not wait for a response before Tronca shot Randall three to five times. Valerie Vandervort was present in the building and heard the shots. Radamacher told her Tronca shot Randall. Tronca told Ogden what he had done. Radamacher and Ogden helped Tronca remove the body, cover it with plastic, and dump it in a remote location. Tronca had the paint room at AJT Auto repainted. He told an employee of AJT Auto, Jeremiah Griggs, he shot Randall. Radamacher showed officers the place where the body was hidden.

Tronca was charged with first-degree murder, in violation of Iowa Code section 707.2 (2014). He filed a motion to suppress, claiming the vehicle should not have been impounded because there was no issue of officer safety or evidence preservation related to the charge he was driving while his license was

---

[2] Randall was shot in the head with a .380 Lorcin and shot in the torso with a .45 Ruger. A .45 Ruger handgun was found in Tronca's office.

suspended. At the suppression hearing, the prosecutor stated he believed the issue was "the delay actually doing the search and getting the search warrant as far as the impoundment or seizure of the vehicle shouldn't have happened," and defense counsel agreed.

The district court denied the motion to suppress. The court found:

> Both occupants of the vehicle had been placed under arrest and were transported to the Waterloo Police Department for processing. There was no licensed driver remaining at the scene to remove the vehicle from the roadway. In addition, Officers had the backdrop of the foregoing facts to establish not only reasonable suspicion but probable cause that the vehicle contained contraband. The facts and circumstances outlined above would lead a reasonably prudent person to believe that the vehicle contained contraband. It was reasonable and, in fact, prudent for officers to secure the vehicle while a search warrant was obtained. . . . The seizure of the vehicle was constitutionally permissible.

A jury found Tronca guilty of murder in the first degree. He was sentenced to life in prison. Tronca now appeals his conviction.

## II. Search and Seizure

**A.** Tronca claims the district court should have granted his motion to suppress. He states the impoundment of the Alero was not reasonable under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. He claims the Waterloo Police Department did not have reasonable standardized procedures for the impoundment of vehicles and the car was solely impounded for the purpose of investigating criminal activity.

In general, "a search of private property without valid consent is *unreasonable* unless it has been authorized by a warrant issued upon probable cause." *State v. Huisman*, 544 N.W.2d 433, 436 (Iowa 1996). A vehicle inventory search is recognized as an exception to the warrant requirement. *Id.*

The legality of a vehicle inventory search is dependent upon (1) the validity of the impoundment, and (2) the scope of the inventory. *Id.* Because the officers obtained a search warrant after impounding the Alero, this case concerns only the first element—the validity of the impoundment.

"An impoundment is proper if it is reasonable." *Id.* In determining the reasonableness of impoundment, "we look for the existence of reasonable standardized procedures and a purpose other than the investigation of criminal activity." *Id.* at 437. We do not "second-guess[ ] a police officer's exercise of professional judgment regarding impoundment of an automobile when the judgment was exercised in accordance with otherwise reasonable police department regulations." *Id.* (citation omitted). It is not necessary for there to be a written standardized policy. *Id.* The policy should "contain reasonable standardized criteria limiting an officer's discretion to impound a vehicle." *Id.* at 438. The standardized policies should not give officers unlimited discretion to conduct searches. *Id.*

As noted, "an impoundment is unconstitutional if it is done to investigate suspected criminal activity." *Id.* at 439. "[A]n investigatory purpose invalidates an inventory search only if the search is conducted for the *sole* purpose of investigation." *Id.* "To decide whether the officers were motivated solely by an investigatory purpose, we examine whether, when viewed objectively, an administrative reason for the impoundment existed." *Id.* "If the officers could have had a caretaking reason to impound the car, then we assume they did not act solely to investigate criminal activity. We do not analyze the subjective motivations of the officers." *Id.* at 439-40.

At the suppress hearing, Officer Saunders testified:

> Q. And are vehicles at certain times towed when there's not a valid driver to take a vehicle from the scene if no one requests otherwise? A. Yes.
> Q. And would that be a standard procedure with the Waterloo Police Department? A. Yes.
> Q. And it's not always done, but without a valid driver to take that, is towing the vehicle an option that you have with the Waterloo Police Department? A. It could be, yes.

We determine the evidence shows the Alero was impounded pursuant to reasonable standardized procedures of the Waterloo Police Department. Although the policy of the police department was not completely articulated during the suppression hearing, the testimony of Officer Saunders shows there were reasonable standardized procedures for towing vehicles. *See id.* at 437 (noting "we look for the existence of reasonable standardized procedures"). Under these standardized procedures, a vehicle could be towed if there was no valid driver at the scene and no one had requested the car be picked up.

The evidence shows Tronca did not request to have anyone else come to take the car and there was no valid driver to remove the vehicle from the scene. Both the driver, Tronca, and the passenger, Radamacher, had been taken to the police station. Officer Saunders's testimony shows the officers acted within the scope of the reasonable standardized procedures of the police department when they made the decision to tow the vehicle. We will not second-guess the officers' "exercise of professional judgment regarding impoundment of an automobile when the judgment was exercised in accordance with otherwise reasonable police department regulations." *See id.*

We also determine the sole purpose of the impoundment was not to investigate criminal activity. Officer Tyler testified there were no licensed drivers available to take the vehicle after Tronca and Radamacher were arrested. He additionally stated the vehicle was towed for "safekeeping" and due to information received in the missing person case. Because the officers had a caretaking reason to impound the car, we can assume they did not act solely to investigate criminal activity. *See id.* at 439-40.

**B.** Tronca claims the officers did not have probable cause to seize the vehicle. He states the seizure was improper because officers did not have probable cause to believe there was contraband in the vehicle. Tronca states at the time the vehicle was seized officers did not have sufficient information to show the vehicle was involved in criminal activity.

On constitutional issues our review is de novo. *State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007). The seizure of a vehicle, prior to the issuance of a search warrant, may be valid based upon probable cause coupled with exigent circumstances.[3] *State v. Hoskins*, 711 N.W.2d 720, 726 (Iowa 2006). There is probable cause for the search and seizure of a vehicle:

> when the facts and circumstances would lead a reasonably prudent person to believe that the vehicle contains contraband. The facts and circumstances upon which a finding of probable cause is based include "the sum total . . . and the synthesis of what the police [officer has] heard, what [the officer] knows, and what [the officer] observe[s] as [a] trained officer[ ]."

---

[3] The exigency requirement is satisfied by a vehicle's inherent mobility. *State v. Allensworth*, 748 N.W.2d 789, 795 (Iowa 2008). The exigency requirement is satisfied if the vehicle is searched at the scene or if the vehicle is impounded and searched later. *Id.* at 797.

*Id.* (citation omitted). Probable cause "must be based on facts that would justify a magistrate to issue a warrant, even though the officers had not actually obtained a warrant." *Id.* "A probable cause finding rests on a nexus between the criminal activity, the place to be searched, and the items to be seized." *Id.*

We determine the officers had probable cause to seize the Alero. The officers had information Tronca was involved in the distribution of methamphetamine and he owned firearms. The officers had information there had been a shooting at Tronca's business and Randall had last been seen there. The officers were aware Tronca denied knowing Radamacher but at the time of the stop was in a vehicle with Radamacher. Furthermore, when officers came to Tronca's business looking for Radamacher, stating "so anything beyond a dead body, we're not concerned about," Tronca responded, "[T]hat's why I'm not going to let you in here." Additionally, there was Officer Saunders's observation the occupants of the Alero appeared to be "possibly trying to hide something" while the police car was attempting to stop the vehicle.

In addition, the officers were entitled to stop the vehicle because they had a reasonable belief there was a valid warrant for the arrest of Radamacher, who was a passenger in the vehicle. *See United States v. O'Connor*, 658 F.2d 688, 691 (9th Cir. 1981) ("It is obvious that in executing the warrant, the agents could stop the vehicle in which they reasonably thought O'Connor was a passenger.").

We agree with the district court's conclusion the officers had probable cause to believe the vehicle contained contraband. We conclude the court properly denied the motion to suppress.

### III.    Ineffective Assistance

Tronca claims he received ineffective assistance from defense counsel. We review claims of ineffective assistance of counsel de novo. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). To establish a claim of ineffective assistance of counsel, a defendant must show (1) the attorney failed to perform an essential duty and (2) prejudice resulted to the extent it denied the defendant a fair trial. *State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). A defendant has the burden to show by a preponderance of the evidence counsel was ineffective. *See State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992).

**A.**    Tronca claims defense counsel should have challenged the stop of the Alero on the ground it was pretextual. He states the district court could have found a pretextual stop was unconstitutional under article I, section 8 of the Iowa Constitution.

Under the United States Constitution, the reasonableness of traffic stops does not depend on the actual motivations of the officers. *Whren v. United States*, 517 U.S. 806, 813 (1996). The United States Supreme Court has concluded pretextual stops are constitutional under the Fourth Amendment. *See id.* at 814. Our supreme court has stated, "The search and seizure clause of the Iowa Constitution is substantially identical in language to the Fourth Amendment. We therefore usually deem the two provisions to be identical in scope, import, and purpose." *State v. Kreps*, 650 N.W.2d 636, 640-41 (Iowa 2002) (citations omitted). Our supreme court has also stated, "The motivation of the officer stopping the vehicle is not controlling in determining whether reasonable suspicion existed. The officer is therefore not bound by his real reasons for the

stop." *Id.* at 641 (citations omitted); *see also State v. Harrison*, 846 N.W.2d 362, 366 (Iowa 2014).

Tronca acknowledges the law in Iowa does not support his claim a pretextual stop is unconstitutional under the Iowa Constitution. *But cf. In re Pardee*, 872 N.W.2d 384, 397 (Iowa 2015) (Wiggins, J., concurring specially) ("However, I would go further and find a pretextual stop violates article I, section 8 of the Iowa Constitution."). Tronca asks for a modification of the current law to include an examination of an officer's subjective reasons for a stop in order to evaluate whether the stop was pretextual. "We are not at liberty to overturn Iowa Supreme Court precedent." *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990). We determine Tronca has not shown he received ineffective assistance due to defense counsel's failure to challenge the stop of the Alero on the ground it was a pretextual stop.

**B.** Tronca claims he received ineffective assistance because defense counsel did not challenge the seizure of AJT Auto prior to the issuance of a search warrant. He states officers seized the building, not allowing anyone in or out, for some period of time before they obtained a search warrant and then executed the warrant. He notes, "The exact length of time between the seizure and the granting of a search warrant cannot be determined by the current record." The State agrees it is impossible to assess the length of the State's seizure of AJT Auto based on the current record. We determine this issue should be preserved for possible postconviction proceedings. *See State v. Oberhart*, 789 N.W.2d 161, 163 (Iowa 2010) (preserving an issue for

postconviction review when the record was inadequate to decide the issue in the direct appeal).

We affirm Tronca's conviction for first-degree murder.

**AFFIRMED.**