STATE of Iowa, Appellee,

v.

Gregory Earl JORDAN, Appellant.

No. 08–0509.

Supreme Court of Iowa.

March 5, 2010.

Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and James J. Katcher and Sue Swan, Assistant County Attorneys, for appellee.

APPEL, Justice.

The defendant appeals his conviction for theft in the second degree. In his sole allegation of error, the defendant asserts that the district court erred in refusing to extend the deadline for filing pretrial motions and notices of affirmative defenses. He argues that the denial effectively prevented him from raising a diminished responsibility defense. The court of appeals affirmed his conviction. On further review, we vacate the decision of the court of appeals, reverse the district court judgment, and remand the case for further proceedings.

## I. Factual and Procedural History.

On January 26, 2006, Brandon Boesenberg, a J.C. Penney's loss prevention officer, observed the defendant, Gregory Earl Jordan, shove numerous pairs of pants and several dress coats into two store bags. Jordan then left the Crossroads Mall store without paying. After calling mall security and the Waterloo Police Department, Boesenberg gave chase. While the officer caught up with Jordan in the mall parking lot and was able to retrieve the stolen goods, the defendant managed to flee the scene. The clothing taken, twelve pairs of pants and three coats, had a retail value of $2097.20.

Based on eyewitness reports, Waterloo police eventually tracked Jordan to a red Toyota and placed him under arrest. Law enforcement officers transported Jordan back to the J.C. Penney store where Boe-

senberg positively identified him. Thereafter, Jordan was taken to the Waterloo Police Department. While en route, Jordan confessed to the theft, claiming that his friend masterminded the crime as a means to obtain rent money.

On February 2, the State charged Jordan with second-degree theft as a habitual offender in violation of Iowa Code sections 714.1(1), 714.2(2), and 902.8 (2005). On February 13, Jordan filed a written arraignment, entered a plea of not guilty, and demanded a speedy trial. Based on this filing and the rules of criminal procedure, the court set the deadline for filing pretrial motions and notices of affirmative defenses as March 27—forty days later.[1]

Attorney Kelly Smith was originally appointed to represent Jordan. Shortly after the appointment, but prior to the motion deadline, attorney Smith moved to withdraw as counsel, asserting that the attorney-client relationship had deteriorated beyond repair. After a hearing, the district court denied the motion on March 24, concluding that the request was "nothing more than game playing" on the defendant's part. On March 27, Jordan filed a pro se motion for dismissal of counsel.

At a pretrial conference before a different district court judge on April 7, attorney Smith joined Jordan's motion and renewed her motion to withdraw. She informed the court that Jordan refused to communicate with her and had generally been uncooperative in preparing for trial. Attorney Smith concluded, "At this point it appears to me that the attorney-client relationship is nonexistent.... I can't discuss even basic issues, let alone trial rights, proposed defenses and potential witnesses with Mr. Jordan." In exchange for Jordan's waiver of his right to speedy trial, the court agreed to dismiss attorney Smith and appoint new counsel.

On that same day—eleven days after the deadline for filing pretrial motions and notices of affirmative defenses—the court appointed attorney Michael Bandy to represent Jordan. Less than a month later, attorney Bandy filed a Request for Extension of Time for Filing Pretrial Motions and for Providing Notice of Defenses to the State, Notice of Diminished Capacity Defense,[2] and a Request for Expert at State's Expense. The motions stated that Jordan was diagnosed with paranoid schizophrenia in 1996, that he was currently being treated for the condition, and that he was suffering from the illness at the time of the alleged offense. The State resisted all three motions, noting that the deadline for filing pretrial motions had elapsed.

At a hearing on the pending motions, defense counsel noted that under our rules of criminal procedure late motions could be excused and the motions deadline extended for good cause. According to the defense, the requisite good cause existed here. Attorney Bandy argued:

> [I]n this case I guess the good cause would be is that I am a new attorney to Mr. Jordan and that in my talks with him it became obvious to me that this

---

1. The fortieth day after Jordan's arraignment was actually Saturday, March 25, 2006, causing the deadline to be extended to Monday, March 27. *See* Iowa Code § 4.1(34).

2. We recently noted that at times the court has "alternatively described the common law concept of decreasing a legally sane individual's criminal liability on the basis of a mental defect as a defense of 'diminished capacity' and 'diminished responsibility.' " *Anfinson v. State*, 758 N.W.2d 496, 502 n. 6 (Iowa 2008). Because our rules of procedure refer to the defense as one of "diminished responsibility," we adopted the term "diminished responsibility" in *Anfinson* for consistency and clarification purposes. *Id.* As such, we will use the term "diminished responsibility" in this opinion.

was something that needed to be filed. I have no explanation as to why Miss Smith didn't do that or didn't perceive it. I mean she just might not have came to the same conclusion that I did.

The district court, however, determined that good cause did not exist. First, the court found that the motion deadline expired while Jordan was represented by a different attorney, whose trial strategy may have been different than that of his present counsel. The court opined that a change in trial strategies or counsel has not been recognized as constituting good cause.

The district court went on to note that no factual record existed to support a connection between paranoid schizophrenia and a person's ability to form the specific intent necessary to commit a theft. The court further opined that Jordan did not raise a diminished responsibility defense to his prior convictions in 1998 and 2002. Without a showing of good cause "and in the absence of any showing that the defense would have any merit," the district court saw no grounds to restart the clock simply because new counsel had been appointed. As such; the court denied the defendant's pending motions.

Thereafter, Jordan requested a competency evaluation which was later completed at the Iowa Medical and Classification Center at Oakdale. Following the competency evaluation, Jordan refiled his notice of diminished responsibility defense, asserting that a factual basis for the defense now existed. The State renewed its timeliness objection. It does not appear that the district court ruled on Jordan's renewed notice of diminished responsibility defense.

The defendant eventually stipulated that he was competent to stand trial and waived his right to speedy trial within one year. On April 6, 2007, Jordan agreed to a bench trial on the minutes of testimony.

The district court found Jordan guilty of theft in the second degree under Iowa Code sections 714.1(1), 714.2(2), and 902.8. The district court sentenced Jordan as a habitual offender to an indeterminate prison sentence of fifteen years, with a minimum term of three years.

The defendant filed a pro se application for delayed appeal in March 2008. The State did not resist. We granted the application and transferred the case to the court of appeals. The court of appeals determined that the district court abused its discretion in refusing to extend the deadline for filing pretrial motions and notices, but concluded that reversal of Jordan's conviction was unnecessary as the defendant was not prejudiced by the error. Jordan filed an application for further review.

## II. Standard of Review.

■ We review a district court's good cause determination for extending a motion deadline for an abuse of discretion. *State v. Christensen,* 323 N.W.2d 219, 222–23 (Iowa 1982). An abuse of discretion will not be found unless " 'such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Morrison,* 323 N.W.2d 254, 256 (Iowa 1982) (quoting *State v. Buck,* 275 N.W.2d 194, 195 (Iowa 1979)).

## III. Discussion.

Iowa Rule of Criminal Procedure 2.11(11)(*b*)(1) proscribes:

> If a defendant intends to rely upon the defense of ... diminished responsibility at the time of the alleged crime, the defendant shall, within the time provided for the filing of pretrial motions, file written notice of such intention.

Iowa R.Crim. P. 2.11(11)(*b*)(1). Pretrial motions and notices are required to be filed no later than forty days after arraign-

ment. *Id.* r. 2.11(4). Neither party disputes that the deadline for filing pretrial motions and notices in this case was March 27, 2006, and that Jordan did not file the disputed motions until May 8, 2006, approximately six weeks after the deadline. Thus, there is no issue as to whether Jordan's notice of his intention to raise a diminished responsibility defense was timely. The only issue presented in this appeal is whether the late filing can be excused.

Our rules of criminal procedure provide, "The court may for good cause shown, allow late filing of the notice [of diminished responsibility defense] or grant additional time to the parties to prepare for trial or make other order as appropriate." *Id.* r. 2.11(11)(*b*)(1). Absent a showing of good cause, the defendant "may not offer evidence on the issue of … diminished responsibility," except through the defendant's own testimony. *Id.* r. 2.11(11)(*d*). These rules are justified by the need to prevent unfair surprise and unnecessary delays. *State v. Taylor,* 336 N.W.2d 721, 724 (Iowa 1983).

While the existence of good cause is a discretionary determination of the trial court, the preclusive sanction of rule 2.11(11)(*d*) should not be imposed lightly. *Id.* In determining whether good cause exists, therefore, the district court should carefully weigh " 'the interest of the defendant in a full and fair trial against the interests of avoiding surprise and delays.' " *Christensen,* 323 N.W.2d at 223 (quoting *United States v. Barron,* 575 F.2d 752, 757 (9th Cir.1978)). Factors considered in the application of this balancing test include the adequacy of the defendant's reasons for failing to comply with the applicable rules of procedure and whether the State was prejudiced as a result. *Id.* at 223–24.

Upon our review of the record, we conclude that Jordan's untimely motion did not amount to unfair surprise, an unnecessary delay, or cause other prejudice to the State. Jordan waived his right to speedy trial prior to filing his diminished responsibility notice. At that point, trial was several weeks away, giving the State ample opportunity to investigate the merits of Jordan's proposed defense. The record substantiates this conclusion. After notice was filed, the trial was continued several times and did not actually occur for almost one year, after the State conducted a competency examination of the defendant. The State's interest and the purpose of rule 2.11(11)(*d*), therefore, was not served by denying Jordan's motion for an extension. *See State v. Lewis,* 391 N.W.2d 726, 729 (Iowa Ct.App.1986).

The appointment of new counsel, moreover, provided adequate grounds for the court to excuse the late filing. Although the appointment of new counsel will not always constitute good cause, a relevant factor to consider when evaluating the existence of good cause is the length of time an attorney has been involved in the case. *State v. Grimme,* 338 N.W.2d 142, 145 (Iowa 1983). Here, the appointment of attorney Bandy supports a finding of good cause. Bandy was Jordan's second counsel, not his sixth or seventh, which would evidence an intent to cause delay. Once appointed, Bandy filed the contested motions within a month. Considering prior counsel's candid statement that she was unable to communicate with Jordan, the late filed motions amount to more than simply a change in trial strategy.

In refusing to grant Jordan's motion to extend the deadline, the district court did not consider whether the State would be prejudiced by the late filing and gave little weight to Jordan's justifications for missing the motion deadline. *See Rosado v. State,* 650 So.2d 681, 682 (Fla.Dist.Ct.App. 1995) (holding that preventing defendant

from raising insanity defense was too harsh a sanction for late notice where there was no prejudice to the State). Instead the district court based its conclusion that good cause did not exist on the perceived merits of Jordan's proffered defense, concluding that no factual connection existed between the mental illness and the crime committed. Rather than determine whether good cause existed to justify the late filing, the district court seemingly required that Jordan demonstrate a question of fact to warrant submission of a particular instruction or theory of defense. Such a requirement amounts to putting the cart before the horse and is inconsistent with the general requirements of notice pleading. *Cf. United States v. Cameron*, 907 F.2d 1051, 1058 n. 10 (11th Cir. 1990) (noting that under the similar federal rule defendants are only required to provide notice of the defendant's "intention" to rely upon the defense and does not require a "detailed description" of the evidence). The issue before the district court was not whether Jordan had a valid diminished responsibility defense, but rather whether the defendant had a right to assert that defense at all.

That is not to say, however, that the district court is required to find good cause for the late filing of every proffered defense. For instance, good cause would not exist where a defendant attempted to raise a diminished responsibility defense to a general intent crime, as the defense is legally unavailable to such crimes. Good cause would likewise not exist where the defendant sought to raise a patently absurd defense. Neither of these scenarios occurred here.

■ Considering the factors noted above, we conclude that the district court abused its discretion in not finding good cause to extend the motion deadline. Merely determining that the district court erred, however, does not end the analysis.

" 'Even if an abuse of discretion is found, reversal is not required unless prejudice is shown.' " *State v. Sayles*, 662 N.W.2d 1, 8 (Iowa 2003) (quoting *State v. Buenaventura*, 660 N.W.2d 38, 50 (Iowa 2003)). Where a nonconstitutional error occurs, such as here, we employ harmless error analysis to determine whether the defendant has been prejudiced. *State v. Paredes*, 775 N.W.2d 554, 571 (Iowa 2009). We presume prejudice—that a substantial right of the defendant has been affected— " ' "and *reverse* unless the record affirmatively establishes otherwise." ' " *Id.* (quoting *State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006)).

■ After reviewing the record, we conclude reversal is required. Jordan sought to raise a legally recognized defense to a specific intent crime—theft in the second degree. Because his proposed defense was stymied at its infancy, there is little to no evidence in the record of Jordan's mens rea at the time of the offense. From this limited record, we cannot conclude that the district court's failure to allow Jordan to assert his proposed diminished responsibility defense was harmless. As a result, reversal is warranted.

## IV. Conclusion.

Good cause existed to excuse the late filing of the defendant's motions, including his notice of diminished responsibility defense, where the State was not prejudiced and new counsel had recently been appointed. The district court, therefore, abused its discretion in refusing to extend the motions deadline for good cause.

**DECISION OF COURT OF APPEALS VACATED. DISTRICT COURT JUDGMENT REVERSED, AND CASE REMANDED.**