# IN THE COURT OF APPEALS OF IOWA

No. 15-1050
Filed January 25, 2017

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**KEVIN LEROY BAUDLER,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Madison County, Gary G. Kimes, Judge.

In this interlocutory appeal, Kevin Leroy Baudler challenges the district court's denials of his motion to suppress, motion to extend time for filing pretrial motions, and amended motion to suppress. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Christine E. Branstad and Nathan A. Olson of Branstad Law, PLLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Heard by Danilson, C.J., and Doyle and McDonald, JJ.

**DANILSON, Chief Judge.**

In this interlocutory appeal, Kevin Leroy Baudler challenges the district court's denials of his motion to suppress, motion to extend time for filing pretrial motions, and amended motion to suppress in three related cases.[1] We conclude the search of Baudler's truck was illegal and the district court erred in overruling the motion to suppress. We conclude the motion to extend time in FECR108037 was unnecessary and moot. We further conclude the district court abused its discretion in denying Baudler's motion to extend the time for filing the amended motion to suppress in cases FECR108017 and FECR108018, but we affirm the district court's order denying the amended motion to suppress in all three actions. We therefore remand for an order suppressing all evidence obtained from the search of Baudler's truck and for further proceedings consistent with this opinion.

**I. Background Facts and Proceedings.**

On January 7, 2015, Assistance Chief Terry Miller, Deputy Gary Davis, and Officer Todd Halverson executed a search warrant for an outbuilding and a fifth-wheel camper located on a property in Winterset, Iowa. The search warrant sought a 2009 Yamaha Rhino utility task vehicle (UTV) and a CAT skid loader believed to be stolen, and sought permission to search the camper for "documentation of ownership and keys and wench remote for [the] Yamaha UTV and skid loader." The application for search warrant was supported by

---

[1] The three related cases are FECR108037, charging one count of second-degree theft; FECR108018, charging two counts of first-degree theft and one count of manufacture, deliver, or possess with intent to manufacture or deliver methamphetamine; and FECR108017, charging one count of first-degree theft.

information provided by a confidential informant (CI) "detailing the theft and location of a stolen 2009 Yamaha Rhino and CAT skid loader."

The property was owned by Rita Blackford, who permitted Baudler to store his belongings and park his camper there in exchange for his help in upkeep of the property. Upon arriving at the property, the officers first spoke with Blackford and presented the search warrant. The officers then searched the outbuilding, discovered the skid loader, and confirmed the skid loader was stolen. Because the officers did not locate the UTV inside the outbuilding, they spoke with Blackford again and asked where the UTV was located. Blackford gave consent to search the entire property. The UTV was located inside a barn on the property where officers also discovered a stolen Kubota lawn tractor and a large number of cordless drills. Deputy Davis testified the tools were not confirmed stolen at that time.

While the officers were searching the property, Baudler arrived in a truck. Baudler parked and exited the truck before being placed under arrest by Deputy Davis for possession of stolen property. The officers testified while Baudler was moving in and out of the truck, they could see cordless drills and equipment in the back seat of the vehicle.

In an incident report attached to the minutes of testimony, Officer Halverson stated he asked Baudler where the key to the lawn tractor was located, and Baudler informed him where the lawn tractor key could be found in the camper and advised Officer Halverson the key to the UTV was in his pocket.

All three officers testified at the hearing on Baudler's motion to suppress. Deputy Davis testified he believed the lawn tractor key was missing and that Baudler "wasn't sure whether it was on his key ring or inside of the vehicle."

Officer Halverson testified he was able to locate the lawn tractor key inside the camper based on Baudler's explanation of where it would be found. In regard to the key to the skid loader, Officer Halverson testified it was not located at the scene and was later found on Baudler's person at the jail. There was some potential inconsistency in the officers' testimony as Assistant Chief Miller testified they were looking for the key to the UTV, and he said it was found on Baudler's person at the jail.

Baudler's son also arrived at the property while the search warrant was being executed. Baulder's son stated he had a key to the truck and permission to take it, and he asked that he be allowed to take the vehicle. Officer Halverson testified Baudler's son was acting "hinky," and Assistant Chief Miller testified Baulder's son was trying to get into the vehicle. Assistant Chief Miller testified they did not permit Baudler's son to take the truck and informed him they needed to look through the vehicle before he took it.

After Deputy Davis left the scene with Baudler, Officer Halverson and Assistant Chief Miller searched the truck. The officers found a glass pipe and methamphetamine inside a sunglasses case, and the search was stopped. The officers offered differing reasons for the search. Deputy Davis testified when he left the property it was his intention that the truck would be impounded.

In contrast, in his incident report Officer Halverson stated they "were requested by Deputy Davis to search the vehicle because he stated the plates

did not come back to the proper truck." At the hearing on the motion to suppress, Officer Halverson testified he searched the vehicle because Deputy Davis requested the officers to do so. He stated after they discovered the methamphetamine they contacted Deputy Davis and informed him of what they had found, and the search was stopped. Officer Halverson testified it was his understanding the truck was going to be impounded.

> And yet another explanation from Assistant Chief Miller, who testified:

> Deputy Davis told me he needed [the truck] searched incident to arrest. At that point the truck was locked and I told [Baudler's son] that we needed to look through the vehicle before he took it. . . . After [Deputy Davis] told us—asked us to search the vehicle incident to arrest, [Baudler's son] unlocked it for me. I stood in the door, kind of looked in the vehicle and I called Officer Halverson over to assist me with the search. Almost within seconds he found some methamphetamine and a pipe . . . . At that point I told Officer Halverson that I saw numerous tools, Milwaukee tools, plus like a collection of vehicle titles. I told him about that. Then I went back to my car, called Deputy Davis and told him we found what we believed was methamphetamine. He said we were going to impound the vehicle, so we stopped the search.

The officers testified Blackford had stated she wanted all stolen equipment removed and she did not want Baudler or his son on her property. But Deputy Davis acknowledged Blackford never specifically said she wanted the truck to be removed from her property.

On February 20, 2015, Baudler was charged by trial information in three separate cases for three counts of first-degree theft, class "C" felonies, in violation of Iowa Code sections 714.1(1) and 714.2(1) (2015); the manufacture, delivery, or possession with intent to manufacture or deliver methamphetamine, a class "C" felony, in violation of Iowa Code sections 124.401(1)(c)(6) and 124.413;

and second-degree theft, a class "D" felony, in violation of Iowa Code sections 714.1(4) and 714.2(2).

On March 16, 2015, Baudler filed a motion to suppress, challenging the search of his truck.  A hearing was held on the motion to suppress on April 14.  On April 17, Baudler filed a combined amended motion to suppress—challenging representations regarding the CI contained in the search warrant application—and motion to extend the deadlines contained in Iowa Rule of Criminal Procedure 2.11 to allow for the filing of the amended motion.  In an April 20 order, the district court overruled the motion to suppress "based upon the record made and . . . adopt[ing] the resistance of the State."  On April 27, Baudler filed a motion to enlarge, amend, and reconsider the district court's overruling of the motion to suppress.  On May 19, a hearing was held on the amended motion to suppress, the motion to extend time, and the motion to enlarge, amend, and reconsider.  The district court orally overruled the motions in their entirety at the conclusion of the hearing and also by written order filed May 19.  Baudler now appeals.

**II. Scope and Standard of Review.**

Baudler claims the district court should have granted his motion to suppress and amended motion to suppress on federal and state constitutional grounds.  Therefore, our review is de novo.  *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011).  "This review requires 'an independent evaluation of the totality of the circumstances as shown by the entire record.'  The court gives 'deference to the factual findings of the district court due to its opportunity to evaluate the credibility of the witnesses, but [is] not bound by such findings.'"  *Id.* (citations omitted).  With respect to the issue of probable cause to issue a search warrant,

we "merely decide whether the issuing judge had a substantial basis for concluding probable cause existed." *State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997). "[W]e do not independently determine probable cause." *State v. McNeal*, 867 N.W.2d 91, 100 (Iowa 2015).

"We review a district court's good cause determination for extending a motion deadline for an abuse of discretion." *State v. Jordan*, 779 N.W.2d 751, 754 (Iowa 2010). "An abuse of discretion will not be found unless 'such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Id.* (citations omitted).

**III. Timeliness of Appeal.**

The State contends this court lacks jurisdiction to hear Baudler's claim regarding the motion to suppress because the motion to enlarge, amend, and reconsider did not toll the thirty-day time period for filing a notice of appeal pursuant to Iowa Rule of Appellate Procedure rule 6.101(1)(b). However, the motion to enlarge, amend, and reconsider was timely filed within fifteen days of the court's order overruling the motion to suppress. *See* Iowa Rs. Civ. P. 1.904(2), 1.1007. Although the motion to enlarge, amend, and reconsider asked the court to address issues raised in the amended motion to suppress, it also requested the court amend its decision regarding the issues raised in the motion to suppress.

A motion to enlarge, amend, and reconsider is proper and will toll the time for appeal "when used to obtain a ruling on an issue that the court may have overlooked, or to request the district court enlarge or amend its findings when it fails to comply with rule 1.904(1)." *Baur v. Baur Farms, Inc.*, 832 N.W.2d 663,

668-69 (Iowa 2013). Here, in its order overruling the motion to suppress, the district court stated only: "This court overrules the defendant's motion to suppress based upon the record made and hereby adopts the resistance of the State." The order was not in compliance with rule 1.904(1), which requires "[t]he court trying an issue of fact without a jury . . . [to] find facts in writing, separately stating its conclusions of law, and direct an appropriate judgment."[2] Because the district court failed to recite any findings of facts and summarily denied the motion by reference to the State's resistance, Baudler's motion to enlarge, amend, and reconsider was properly filed and tolled the time for appeal. *See* Iowa R. App. P. 6.104(1)(b)(2) ("An application for interlocutory appeal must be filed within 30 days after entry of the challenged ruling or order. However, if a motion is timely filed under Iowa R. Civ. P. 1.904(2), the application must be filed within 30 days after the filing of the ruling on such motion.").

We conclude the appeal from the district court's denial of the motion to suppress was timely filed and we may consider the issues asserted.

**IV. Motion to Suppress.**

The parties do not dispute the search warrant did not authorize the search of Baudler's truck and the search warrant did not encompass or reference stolen tools. Baudler contends the district court should have granted his motion to suppress because the warrantless search of his truck by officers was unconstitutional in that it was not supported by probable cause and no exceptions to the Fourth Amendment warrant requirement apply.

---

[2] Iowa Rule of Criminal Procedure 2.11(8) states, "A pretrial motion shall be determined without unreasonable delay. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record."

"Warrantless searches and seizures are per se unreasonable, unless one of the few carefully draw exceptions to the warrant requirement exists." *State v. Freeman*, 705 N.W.2d 293, 297 (Iowa 2005). "These exceptions include: (1) search based on probable cause coupled with exigent circumstances, (2) consent search, (3) search incident to a lawful arrest, and (4) search of items in plain view." *State v. Watts*, 801 N.W.2d 845, 850 (Iowa 2011). Another "well-recognized exception to the warrant clause is a vehicle inventory search." *State v. Huisman*, 544 N.W.2d 433, 436 (Iowa 1996). "The State has the burden to prove by a preponderance of the evidence that a recognized exception to the warrant requirement is applicable." *Freeman*, 705 N.W.2d at 297.

Here, the State contends the search of the truck was proper because it was based on probable cause coupled with exigent circumstances and the inventory exception applies.

*A. Probable Cause and Exigent Circumstances.* "The [United States] Supreme Court has recognized a 'specifically established and well-delineated' exception to the warrant requirement for searches of automobiles and their contents." *State v. Allensworth*, 748 N.W.2d 789, 792 (Iowa 2008). In determining whether the probable-cause-and-exigent-circumstances exception applies, "[w]e have previously applied the 'inherent exigency' rationale for warrantless probable-cause searches and seizures of readily mobile vehicles." *Id.* at 795 (citing *State v. Cain*, 400 N.W.2d 582, 585 (Iowa 1987) ("[T]he exigency requirement is always satisfied by a vehicle's inherent mobility.")). "[U]nder the automobile exception which was created in recognition of the decreased expectation of privacy accorded to a vehicle and the exigencies

associated with it, a warrantless search of a vehicle may be made if the authorities have probable cause." *State v. Lam*, 391 N.W.2d 245, 248 (Iowa 1986).[3] Thus, although the inherent mobility of a vehicle may fulfill the exigency requirement, officers must still have probable cause to effectuate a warrantless search.

> Probable cause exists to search a vehicle "when the facts and circumstances would lead a reasonably prudent person to believe that the vehicle contains contraband. The facts and circumstances upon which a finding of probable cause is based include the 'sum total . . . and the synthesis of what the police [officer has] heard, what [the officer] knows, and what [the officer] observe[s] as [a] trained officer[].'"

*State v. Hoskins*, 711 N.W.2d 720, 726 (Iowa 2006) (citations omitted). "The assessment of probable cause 'is based on probabilities and not mere suspicion,' but it need not 'rise to the level of certainty beyond a reasonable doubt.'" *Id.* (citation omitted).

The State argues the officers had probable cause to search Baudler's truck (1) to search for the key to the stolen lawn tractor; (2) because officers had probable cause to believe the truck contained stolen cordless drills and equipment; (3) because additional information provided by Blackford and the CI led officers to believe Baudler had stolen items on different occasions and brought the items to Blackford's property; and (4) due to Baudler's son's suspicious behavior. However, we conclude there was only a suspicion the tools seen in the truck were stolen, and the other facts did not establish probable cause to search the truck.

_____

[3] We acknowledge the automobile exception has been subject to some criticism by our supreme court in special concurrences filed in *State v. Gaskins*, 866 N.W.2d 1, 17, 35-38 (2015).

First, the officers provided conflicting testimony about which key was being sought and where Baudler advised the officers the key was located. Only Deputy Davis testified Baudler informed the officers the missing key (whether it be to the lawn tractor, skid loader, or UTV, as the record is unclear) might be inside the truck. Deputy Davis was asked what Baudler told him about the lawn tractor key, and Deputy Davis testified, "He wasn't sure whether it was on his key ring or inside the vehicle." But Officer Halverson testified he located the lawn tractor key in the camper where Baudler informed him it would be found. Officer Halverson believed the key to the skid loader was the missing key. Officer Halverson stated both in his incident report and at the hearing on the motion to suppress that Baudler informed the officers the missing key was located on his person. A key was, in fact, found on Baudler's person during a search conducted at the jail.

Second, the officers only had a suspicion the cordless drills and equipment viewed inside Baudler's truck might have been stolen. The search warrant did not seek stolen cordless drills, and the officers did not confirm the cordless drills found on the property were stolen. There was no testimony the tools were marked or reflected the identity of any owner other than Baudler. Thus, the fact that Baudler also had a number of cordless drills and equipment inside his vehicle did not give rise to probable cause, particularly since Baudler was in the construction business. Moreover, the information provided by Blackford and the CI did not create a nexus between the criminal activity and Baudler's truck. *See Hoskins*, 711 N.W.2d at 726 ("A probable cause finding

rests on a nexus between the criminal activity, the place to be searched, and the items to be seized.").

The dissent contends the CI informed the officers he was with Baudler when they had stolen tools. We acknowledge Deputy Davis testified at the suppression hearing, "I believe the informant indicated that [Baudler] was with him on one of the thefts where they stole tools." But there was no description of what kinds or types of "tools" were stolen. There was also no evidence of any reports to law enforcement agencies of tools being stolen or anything recited in the search warrant application referencing tools. If law enforcement officers had credible information, it seems only reasonable to assume their application for a search warrant would have encompassed stolen tools in addition to the other items sought to be seized by the search warrant. Possession of stolen tools also appears inconsistent with Officer Halverson's testimony regarding information from the CI that Baudler was stealing items and selling them "to a crushing service or a salvage yard." Moreover, while at the scene, the officers made absolutely no effort to try to determine if the power tools in the shed were stolen. Suspicious yes, but without more information, the threshold of probable cause, even though not a high standard, is not attained.

Additionally, Baudler's son's behavior, even if suspicious, did not provide officers with probable cause. Baudler's son could have been acting "hinky" due to nervousness caused by his father's arrest or other factors unrelated to criminal activity. Therefore, on these facts, we find the exception to the warrant requirement based on probable cause and exigent circumstances did not apply.

*B. Inventory Exception.* In determining whether an impoundment of a vehicle is lawful, "we look for the existence of reasonable standardized procedures and a purpose other than the investigation of criminal activity." *Huisman*, 544 N.W.2d at 437. A standardized procedure "need not be exclusively written." *Id.* "The critical factor in determining whether too much discretion has been granted to police officers regarding impoundment of an arrested person's automobile is the ability for arbitrary searches to be conducted by the police officers." *Id.* at 438 (citation omitted).

Deputy Davis testified the Madison County Sheriff's Department does not have a written policy regarding inventory searches. Deputy Davis explained the policy is to "[s]ecure the vehicle so that all evidence can be preserved. Transport it or have it towed to the office and locked up in the garage."

Officer Halverson testified the Winterset Police Department also has an unwritten inventory policy. Officer Halverson stated the inventory policy is that

> [a]nytime we arrest someone and they have a vehicle there, we impound the vehicle. We do a complete inventory of the interior contents of the vehicle and the condition of the exterior of the vehicle and then it is—we stay with it until a tow company comes and then we follow it to the police department where it gets held.

However, on cross-examination, Officer Halverson admitted he has arrested individuals who are driving and let the passenger take the vehicle home, has allowed people to keep their vehicles in their driveway after being arrested, and has allowed a vehicle to remain at a friend's house after an arrest with the consent of the homeowner. There was also no evidence the Winterset Police Departement inventory policy applied because there was no testimony the search was within the Winterset city limits.

As we have noted, we need not consider the reasonableness of the police officer's decision to impound so long as the impoundment was pursuant to a standardized policy and the officer was not solely motivated to investigate criminal activity. *Id.* at 439. But here, the vague inventory "policies" related by Deputy Davis and Officer Halverson grant officers unlimited discretion to arbitrarily conduct searches. Basically, the officers could choose to impound any vehicle seized. In view of the officers' testimony and the timeline of events surrounding the search of Baudler's truck, we conclude the search was improperly completed solely for investigatory purposes.

"To decide whether the officers were motivated solely by an investigatory purpose, we examine whether, when viewed objectively, an administrative reason for the impoundment existed." *Id.* Here, the officers stated differing reasons for the search. Deputy Davis testified he intended the truck to be impounded when he left the scene. But Assistant Chief Miller testified Deputy Davis instructed the truck to be searched pursuant to a search incident to arrest and only after the methamphetamine was found was he informed by Deputy Davis the truck should be impounded. The initial reason for the search as expressed in Officer Halverson's incident report—that the plates did not track to the proper truck—was not subsequently testified to by any of the officers.[4] The inharmonious reasons for the search and the point at which the truck was ordered to be impounded indicate the officers intended to search the truck to investigate suspected criminal activity.

---

[4] Neither at trial nor on appeal has the State attempted to argue the search was valid as a search incident to arrest or any theory related to the license plates.

Moreover, the manner in which the search was carried out suggests an investigatory rather than inventory purpose. If the purpose of the search was to inventory the vehicle's contents and protect against accusations of theft, officers would likely have searched the entire vehicle and completed a written or electronic inventory. However, the officers discovered methamphetamine quickly after they began searching. Once the methamphetamine was found, the search was stopped. Although an inventory search could perhaps be delayed and completed later, there was no further search for a key or an examination of any tools. The vehicle was then towed to the Law Enforcement Center and put in an impound shed without completion of an inventory search. No additional search was done until after a search warrant was obtained for the truck the next day.

We acknowledge that "[i]f the officers could have had a caretaking reason to impound the car, then we assume they did not act solely to investigate criminal activity." *Id.* at 439-40. Here, because the vehicle was on private property, there was no concern about the safety of the traveling public or a nuisance caused by the vehicle. *See id.* at 437 (noting policy reasons justifying warrantless seizure of automobiles). Officer Halverson testified he believed Blackford did not want the truck to remain on her property. However, Deputy Davis admitted Blackford did not specifically ask that the truck be removed. Rather, Deputy Davis testified Blackford had said "if there was any stolen property on there, she wanted it off and she did not want Kevin Baudler on her property." We do not believe the officers' testimony relaying Blackford's wishes as to stolen property supports the existence of a caretaking reason to impound the truck from private property. Also, Baudler's son was present and available to remove the truck. Further, no

officer testified there was a need to protect the vehicle from theft or vandalism. *See id.*

We conclude the conflicting testimony of the officers, as well as the timeline of events surrounding the search of the truck, indicate the officers searched the truck for the sole purpose of investigating for suspected criminal activity beyond the scope of the search warrant. Thus, we find the inventory exception does not apply to overcome the Fourth Amendment warrant requirement due to the vague impound policies and improper motive.[5]

Because we conclude neither probable cause coupled with exigent circumstances nor the inventory exception applied to permit the officers to conduct the warrantless search of Baudler's truck, the search was illegal. We find the district court improperly overruled Baudler's motion to suppress and improperly denied the motion to enlarge, amend, and reconsider as to the issues related to the search of the truck. As the search of Baudler's truck was illegal, any evidence obtained from the search must be suppressed. *See State v. Naujoks*, 637 N.W.2d 101, 111 (Iowa 2001) ("An unlawful search taints all evidence obtained in the search or through leads uncovered by that search and bars its subsequent use." (citation omitted)).

**V. Motion to Extend Time.**

Baudler also asserts the district court abused its discretion in denying his motion to extend the deadline to allow for the filing of his amended motion to suppress. *See* Iowa R. Crim. P. 2.11. The motions were combined in a single

---

[5] Because the State did not assert the inevitable-discovery doctrine, it is inapplicable. *See State v. McGrane*, 733 N.W.2d 671, 681 (Iowa 2007).

filing on April 17, 2015, three days after the suppression hearing and before the district court's ruling on the motion to suppress, which was filed April 20. Baudler filed his written arraignment in cases FECR108017 and FECR108018 on March 4, 2015.[6] Thus, in these two cases, the amended motion was filed four days beyond the forty-day time period beginning after arraignment as provided in rule 2.11(4). Trial in both of these cases was set for July 7.

But in FECR108037, Baudler filed his written arraignment on March 16. In this case, the amended motion to suppress was, in fact, timely filed within forty days from his arraignment. Accordingly, the motion to extend time in FECR108037 was unnecessary and moot. Before addressing the amended motion to suppress as it relates to FECR108037, we consider the merits of the motion to extend time in the other proceedings.

With respect to the other two actions, we note rule 2.11(3) provides, "Failure of the defendant to timely raise defenses or objections or to make requests which must be made prior to trial under this rule shall constitute waiver thereof, but the court, for good cause shown, may grant relief from such waiver." Thus, Baudler's failure to file the amended motion to suppress within forty days of arraignment pursuant to rule 2.11(4) "constituted a waiver of his constitutional objection unless there was good cause shown to grant relief from such waiver." *State v. Ball*, 600 N.W.2d 602, 604 (Iowa 1999).

When considering what constitutes good cause for an untimely motion to suppress, "[f]actors considered . . . include the adequacy of the defendant's

---

[6] Iowa Rule of Criminal Procedure 2.11(4) provides, "If a written arraignment under rule 2.8(1) is used, the date of the arraignment is the date the written arraignment is filed."

reasons for failure to comply with applicable rules of procedure and whether the State was prejudiced as a result." *State v. Jordan*, 779 N.W.2d 751, 755 (Iowa 2010) (citing *State v. Christensen*, 323 N.W.2d 219, 223-24 (Iowa 1982)). "The defendant's interest in a full and fair trial must be weighed against the State's interest in avoiding surprise and unnecessary delays. The preclusive sanctions of [rule 2.11(3)] should not be imposed lightly." *State v. Eldridge*, 590 N.W.2d 734, 736 (Iowa 1999) (internal citation omitted).

Baudler's amended motion to suppress alleges the search warrant application contained intentional misrepresentations regarding the credibility of the CI and, thus, lacked probable cause. Baudler argued good cause existed to allow for filing of the amended motion to suppress outside the allotted forty days because he did not receive much of the discovery until one day prior to the suppression hearing, and the identity of the CI was not confirmed until the April 14, 2015 hearing.

The State asserts the record reveals Baudler knew the identity of the CI prior to the suppression hearing through his investigator because Baudler's attorney cross-examined the officers, asking if the informant was David Blair and questioning the validity of the representations made about Blair in the search warrant application.

We find the district court's denial of the motion to extend time constituted an abuse of discretion because, until evidence was presented at the suppression hearing, Baudler suspected but did not know with certainty the identity of the CI. We also find significant the missed deadline—by only four days—was not substantial and there was ample time remaining before the scheduled trial date.

The district court gave no reasons for denying the motion to extend time on the record[7] or in the order denying the motions,[8] and we are unable to say the reasons were reasonable because no reasons were provided.

Moreover, Baudler was entitled to a hearing on the merits on his timely amended motion to suppress in case number FECR108037, and it would not serve justice if he is successful on the motion but convicted by use of the same evidence in two corollary cases. Additionally, the State has not shown any prejudice or surprise, nor does the State argue there is any unnecessary delay. We conclude, on these facts, the preclusive sanctions of rule 2.11(3) should not be applied. We therefore reverse the district court's denial of the motion to extend time.

### VI. Amended Motion to Suppress.

Baudler also contends the district court erred in overruling the amended motion to suppress because the search warrant application was not supported by probable cause as it contained misrepresentations regarding the credibility of the CI. In attachment B to the search warrant application, Officer Halverson checked individual boxes to certify:

> The informant is reliable for the following reasons:
>    The informant is a concerned citizen who has been known
>    by the above peace officer for 17 years and who:
>        Is a mature individual.

---

[7] At the hearing on the motion to extend time, amended motion to suppress, and motion to enlarge, amend, or reconsider, the district court, with no additional explanation, stated: "I can tell you now—and I will do a ruling after this—but all of your motions are overruled, each and every one of them in their entirety."

[8] The court's order did not make any findings of fact and summarily denied all of Baudler's motions, stating: "The defendant's pending motions are overruled in their entirety based upon the record, including the motion to reconsider, motion to expand the court's previous ruling, motion to extend deadlines, and motion regarding the amended motion to suppress."

Is regularly employed.
Is [a] well-respected family and/or business person.
Is a person of truthful reputation.
Has no motivation to falsify the information.
Has no known criminal record.
Has otherwise demonstrated truthfulness.

However, each of these statements was shown to be inaccurate by testimony at the suppression hearing.

Officer Halverson was questioned by Baudler's attorney regarding the CI:

Q. At the time you talked to Mr. Blair he was under arrest? A. At the time I talked to Mr. Blair he was in custody and here for a court proceeding.

Q. And as a result of providing information, he was released? Is that correct? A. I have no idea what happened to him after that. I don't know what the deal was that was made.

Q. He was trying to make a deal is why he was giving information? A. I think he was hoping for a deal but we advised him that was not up to us.

Q. But it certainly could work in his favor? A. We never advised him of that. I was not in favor of any deal for David Blair.

Q. That is because Mr. Blair has a criminal history? A. I have had several dealings with David Blair.

Q. Where he was involved in criminal activity? A. Yes. We have arrested him multiple times for thefts. He is a very large thief in my opinion.

Q. Would you call him an honest person? A. I think he can be. He is a thief. I would call him a thief.

Baudler's attorney also questioned Deputy Davis regarding the CI:

Q. The informant is David Blair? A. Correct.

Q. The search warrant indicates David Blair has no criminal history. That is not right; is it? A. No.

. . . .

Q. David Blair has an extensive criminal history? A. He does.

. . . .

Q. You are familiar with David Blair? A. Yes. I know both subjects.

Q. Is David Blair a mature individual in your opinion? A. In my opinion?

Q. Yes. A. You mean age-wise? He is above 21.

Q. Is he regularly employed? A. No.

Q. Is he a well-respected family and/or business person? A. He is a fairly good mechanic.

Q. Would you call him well-respected? A. No. I wouldn't.

Q. A person of truthful reputation? A. I guess the information he gave us was correct.

Q. Would you call him prior to the date of this application a person who you would refer to as a person of truthful reputation? A. I guess I don't understand what you are asking me.

Q. If you were asked, do you believe he is a truthful person? A. Okay.

Q. Based on your knowledge and experience is David Blair a truthful person? A. I guess that all depends on what you ask David.

Q. Would he lie at times? A. Yes.

Q. Did David Blair—was he implicated in any other crimes at the time the search warrant took place? A. I'm not sure at the time.

Q. How did he end up giving this information? Was he under arrest? A. Yes, he was.

Q. And David Blair is the only informant who provided the information for the search warrant; correct? Let me just say, when the search warrant says that the informant gave information, that informant is only referring to David Blair, right? A. Correct.

Baudler contends the search warrant application is not supported by probable cause as required by the Iowa and United States Constitutions and does not comply with Iowa Code section 808.3, which provides, in relevant part:

> A person may make application for the issuance of a search warrant by submitting before a magistrate a written application, supported by the person's oath or affirmation, which includes facts, information, and circumstances tending to establish sufficient grounds for granting the application, and probable cause for believing that the grounds exist. . . . The application or sworn testimony supplied in support of the application must establish the credibility of the informant or the credibility of the information given by the informant.

Baudler argues the search warrant application omitted material facts regarding the CI's credibility.

"We use the *Franks*[9] standard when a defendant challenges the veracity of a search warrant application." *State v. Pate*, No. 11-0971, 2012 WL 3860450, at *6 (Iowa Ct. App. Sept. 6, 2012).

> In *Franks*, . . . the [United States] Supreme Court developed a means to examine truthfulness of an affiant in presenting evidence to a magistrate supporting issuance of a search warrant. This court adopted the *Franks* standard in *State v. Groff*, 323 N.W.2d 204, 206-08 (Iowa 1982). The inquiry adopted by *Franks* is limited to a determination of whether the affiant was purposefully untruthful with regard to a material fact in his or her application for the warrant, or acted with reckless disregard for the truth. If the court finds that the affiant consciously falsified the challenged information, or acted with reckless disregard for the truth in his or her application for the warrant, the offensive material must be deleted and the remainder of the warrant reviewed to determine whether probable cause existed.

*State v. Niehaus*, 452 N.W.2d 184, 186-87 (Iowa 1990) (citations omitted). Thus,

> [w]hen a defendant challenges a search warrant, a *Franks* hearing is required if the defendant makes a substantial preliminary showing that (1) a knowingly and intentionally false statement, or a statement made with reckless disregard for the truth, was included by the affiant and (2) the statement was necessary to the finding of probable cause.

*State v. Heins*, No. 02-0425, 2003 WL 21229151, at *1 (Iowa Ct. App. May 29, 2003).

We find Baudler has made a sufficient preliminary showing that the statements contained in the search warrant application, if not intentionally false, were at the very least made with reckless disregard for the truth. Officer Halverson, one of the affiants in support of the search warrant application, testified he had several dealings with the CI, and knew him to be a "large thief." Deputy Davis testified at the suppression hearing he was familiar with the CI, and

---

[9] *Franks v. Delaware*, 438 U.S. 154 (1978).

knew he had an extensive criminal history.[10]  In fact, the officers' testimony indicates nearly all of the representations related to the credibility of the CI as provided in Attachment B in the search warrant application may be false.  Both officers testified the CI provided the information in the search warrant application as a result of being in custody.  The CI was the only informant who provided the information upon which the search warrant application was found to have probable cause.  Thus, the questionable truthfulness of the representations call into question the existence of probable cause supporting the search warrant.

Notwithstanding the false information, we conclude it is unnecessary to remand this action back to the district court for a *Franks* hearing.  Baudler has identified the specific false information and "[a] reviewing court can remove the offending information and determine whether the remaining information establishes probable cause."  *McNeal*, 867 N.W.2d at 102.  In *McNeal*, our supreme court stated:

> We consider various factors in determining whether information provided by an informant is reliable: (1) "whether the informant was named"; (2) "the specificity of [the] facts detailed by the informant"; (3) "whether the information furnished was against the informant's penal interest"; (4) "whether the information was corroborated" by other information known to law enforcement; (5) "whether the information was not public knowledge"; (6) "whether the informant was trusted by the accused"; and (7) "whether the informant directly witnessed the crime or fruits of it in the possession of the accused."

*Id.* at 102-03 (quoting *State v. Weir*, 414 N.W.2d 327, 332 (Iowa 1987); *accord Niehaus*, 452 N.W.2d at 190).

---

[10] The endorsement on the application for search warrant indicates that the magistrate relied upon the sworn testimony of the CI and Deputy Gary Davis.  Although Officer Halverson was not identified in the endorsement as a person relied upon, the endorsement indicates that the information provided appeared credible because of "attachments A & B," and attachment "A" is an affidavit by Officer Halverson.

Here, the informant was confidential but claimed to have made personal observation of both the UTV and the skid loader. In fact, the CI provided information contrary to his penal interest by acknowledging his participation in the theft of the skid loader and the "cover-up and sale of the UTV." The CI's observations included the possession and storage of both the UTV and the skid loader at the place to be searched. The informant's details of the UTV also matched the specific description provided in the owner's theft report of a Yamaha Rhino, dark red with ghost decals. Deputy Davis corroborated material facts by avowing he had recently observed the UTV and a skid loader next to the building to be searched. The informant also explained that a camper trailer is parked next to the building to be searched, and both Deputy Davis and Officer Halverson corroborated this fact by their own observations within one day of the issuance of the search warrant.

We conclude, even disregarding the offending information concerning the reasons why the CI was credible as listed in Attachment B, "Informant's Information," the magistrate had a substantial basis for concluding probable cause existed. We reach this conclusion considering the totality of the circumstances within the four corners of the application for the search warrant and the reasonable inferences that may be drawn from this information. *See Id.* at 105. Therefore, we find the district court properly overruled the amended motion to suppress.

**VII. Conclusion.**

We conclude Baudler's motion to enlarge, amend, and reconsider tolled the time to appeal the adverse ruling on his motion to suppress. We conclude

the search of Baudler's truck was illegal, and the district court erred in overruling the motion to suppress evidence seized from that search. We conclude the motion to extend time in FECR108037 was unnecessary and moot. We further conclude the district court abused its discretion in denying Baudler's motion to extend the time for filing the amended motion to suppress in cases FECR108017 and FECR108018, but we affirm the district court's order denying the amended motion to suppress in all three actions. We remand for an order suppressing all evidence obtained from the search of Baudler's truck and for further proceedings consistent with this opinion.

**AFFIRMED IN PART**, **REVERSED IN PART, AND REMANDED.**

Doyle, J., concurs; McDonald, J., concurs in part and dissents in part.

**MCDONALD, Judge.** (concurring in part and dissenting in part)

I concur in part and dissent in part. I concur the district court abused its discretion in denying Baudler's request to file an amended motion to suppress evidence. I concur there was probable cause to issue the warrant even when the challenged information is excised from the application. Specifically, two officers independently corroborated the confidential informant's information. *See* Iowa Code § 808.3 (2015) ("The application or sworn testimony supplied in support of the application must establish the credibility of the informant or the credibility of the information given by the informant."). I respectfully dissent from the majority's conclusion the officers lacked probable cause to search Baudler's vehicle.

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment is applicable to state actors by incorporation via the Fourteenth Amendment. *See Mapp v. Ohio,* 367 U.S. 643, 660 (1961). The touchstone of the Fourth Amendment is reasonableness. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1617 (2015) (Thomas, J. dissenting). A search or seizure executed pursuant to a warrant is per se reasonable. A search or seizure executed without a warrant may be "reasonable" within the meaning of the Fourth Amendment in some circumstances. *See id.* For example, the warrantless search of an automobile is constitutionally reasonable when the search is supported by probable cause. *See California v. Carney*, 471 U.S. 386, 394 (1985) (stating the

relevant question in the absence of a warrant is whether "this search was unreasonable").

Probable cause exists to search a vehicle "when the facts and circumstances would lead a reasonably prudent person to believe that the vehicle contains contraband. The facts and circumstances upon which a finding of probable cause is based include the sum total" and "the synthesis of what the police [officer has] heard, what [the officer] knows, and what [the officer] observe[s] as [a] trained officer." *State v. Hoskins*, 711 N.W.2d 720, 726 (Iowa 2006) (citations and internal quotation marks omitted). "The assessment of probable cause is based on probabilities and not mere suspicion, but it need not rise to the level of certainty beyond a reasonable doubt." *Id.* (quotation marks omitted). "A probable cause finding rests on a nexus between the criminal activity, the place to be searched, and the items to be seized." *Id.*

Here, there was probable cause to search Baudler's truck for stolen tools. The officers observed in the barn a large number of power tools. Specifically, they observed "15-20 cordless drills in a bag or a box" and there were several similar bags and boxes. While the officers did not confirm the cordless drills in the barn were stolen, they could reasonably conclude they were in fact stolen. First, the officers already knew Baudler was in possession of other stolen property—the Yamaho Rhino UTV, the skid loader, the Kubota lawn tractor, and the keys to the stolen vehicles. Second, the confidential informant told the officers he and Baudler had stolen tools together. Third, the sheer number of cordless drills was inconsistent with personal use. Fourth, when Baudler arrived in his pickup truck, the officers observed in his truck drills similar to those

observed in the barn. It was reasonable for the officers to conclude the cordless drills in the truck were stolen property being transported to the barn to be stored with the other cordless drills. *See, e.g., Dyson v. People*, 488 P.2d 1096, 1097 (Colo. 1971) (determining probable cause existed to search a vehicle where officers had been informed of the burglary of suits from a local shopping center, stopped the vehicle in the vicinity of the crime, and observed numerous suits in the back seat of the vehicle); *State v. Murray*, 353 A.2d 351, 354–55 (Vt. 1976) (finding probable cause existed to search a vehicle where officer observed pillowcases full of glassware and silverware inside the vehicle, was aware of previous burglary committed using pillow cases, and had a tip the occupants of the vehicle had been involved in prior break-ins).

I thus dissent in part.